**In re Marvin Timothy HARPER,
Margaret Jo Harper,
Debtors.**

**Bankruptcy No. 91–13153–LK.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Aug. 6, 1992.

William Peckham, Austin, Tex., for debtor Harper.

Gary Rowan, Irving, Tex., for creditor, Bergstrom Federal Credit Union.

## MEMORANDUM OPINION ON MOTION TO COMPEL DEBTORS' COMPLIANCE WITH SECTION 521

LARRY E. KELLY, Chief Judge.

Came on for hearing the Motion to Compel Debtors' Compliance with Section 521 filed by Bergstrom Federal Credit Union. The court heard evidence and arguments of counsel and took the matter under advisement for further consideration. For the reasons set out below, the court denies the Motion to Compel and will allow the Debtors to retain the collateral securing the note to Bergstrom Federal Credit Union and continue making timely installment payments under the terms of their loan obligation.

The court has jurisdiction of this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), (M) & (O) and 11 U.S.C. § 521(2). An order consistent with this Memorandum Opinion will be entered of even date herewith.

### FACTS RELEVANT TO THIS PROCEEDING

The Debtors filed their Chapter 7 petition on September 13, 1991. Pursuant to 11

U.S.C. § 521(2), the Debtors timely filed with the Clerk of the Court their Statement of Intention with respect to retention or surrender of property of their bankruptcy estate.[1] The Debtors had a consumer debt with Bergstrom which was secured by a pledge of a 1991 Honda Accord automobile. The Debtors claimed the automobile as exempt and indicated that it was to be retained. The Debtors declined however to either reaffirm the debt or to redeem the property. Bergstrom contacted Debtors' counsel and requested that the Debtors amend their Statement of Intention, taking the position that the options under § 521 are mandatory and exclusive and do not allow the Debtors to retain collateral without redeeming the property under § 722 or reaffirming the debt pursuant to § 524(c). The Debtors refused to amend their Statement of Intention, relying on the *Belanger*[2] case (which at that time was at the bankruptcy court level) and on the fact that they were current in their payments to Bergstrom and planned to continue making payments pursuant to their agreement with the credit union. Bergstrom filed its Motion to Compel Debtors' Compliance with Section 521 on November 14, 1991. The Debtors responded and the court held the hearing on January 9, 1992.

LEGAL AUTHORITIES INTERPRETING
11 U.S.C. § 521(2)

The issue in this case is whether a debtor in a Chapter 7 case must, as a condition of retaining property which secures an installment loan, either redeem or expressly reaffirm the debt underlying the collateral.

1. 11 U.S.C. § 521(2) provides as follows:
 The debtor shall—
 (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
 (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or

The Fifth Circuit has not yet ruled on this issue.

 Bergstrom asserts that this section of the Code is mandatory and exclusive and argues that the statutory text is both clear and unambiguous. Where the language is clear and unambiguous courts should not refer to other provisions or to secondary sources such as legislative history to determine its meaning. See, e.g. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

However, § 521(2) is not so clear. It is composed of three subparts—(A), (B), and (C). These are stated in the conjunctive and therefore all three are applicable. When read together, then, they must be clear and unambiguous. The problem with this can be shown through a few hypotheticals.

To be applicable at all, § 521(2) only requires that there exist some property of the estate which secures a "consumer debt." The term "consumer debt" is defined in Section 101(8) to mean "... debt incurred by an individual primarily for a personal, family, or household purpose." The Fifth Circuit has addressed this definition in *Matter of Booth,* 858 F.2d 1051, 1054 (5th Cir.1988). In a § 707(b) context, the Circuit looked at the Code's definition of "consumer debt." In that case the debtors had three liens secured by their home, and the Court found that funds from one or more of the loans had been used for business purposes, stating:

> that the debtor intends to reaffirm debts secured by such property;
> (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

2. 118 B.R. 368 (Bankr.E.D.N.C.1990), *aff'd,* 128 B.R. 142 (E.D.N.C.1990), *aff'd,* 962 F.2d 345 (4th Cir.1992).

"Accordingly, the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family, or household purposes, is whether it was incurred with an eye toward profit."

With this interpretation, we know that most loans on homesteads, at least in this state, are not business loans and therefore represent "consumer debt." Under Bergstrom's view then, whenever debtors have a residence, whether a conventional homestead or a mobile home, the only way they can retain it, irrespective of value or debt and irrespective of the number of years that they may have maintained their debt obligations current, is to redeem or reaffirm. Of course, redemption does not apply to real property,[3] so, if § 521(2) is mandatory and exclusive, the debtor would be required to reaffirm the homestead debt. This is the court's next concern with how clear and unambiguous the language of this section really is. Since reaffirmation is strictly voluntary and can even be rescinded within the period provided, interpreting § 521(2) to be mandatory and exclusive, thereby requiring adherence to a section of the Code which is just as clearly voluntary and even rescindable creates some degree of ambiguity in the statutory provisions.

Another anomaly which comes to mind is the interplay with 11 U.S.C. § 522(f).[4] What if the debtor decides to retain tangible personal property encumbered with a lien avoidable under this section. Now, if the debtor has tangible personal property which it wishes to exempt, and if § 521(2) is as claimed by Bergstrom, what happens to the Debtor's rights under § 522(f) when it is applicable. Does the debtor still have to redeem or reaffirm because the property was property securing a consumer debt.

Section 521(2) does not say anything about liens which are "not voidable." It merely refers to the debtor's schedule of assets and liabilities which would reflect the assets securing a consumer debt. Does this mean schedules as originally filed, which would properly reflect the asset and the lien, or does it mean schedules as amended after a § 522(f) action, which would then just as properly not reflect the avoided lien? Again, the interpretation of the statute is not so clear.

Another recent case has pointed out how a motion to redeem is premature until the time limit for filing discharge and/or dischargeability complaints and the time limit for filing objections to Debtor's claimed exemptions has expired. It notes how the various time requirements of § 521(2) do not necessarily fit within the time frame set out for these other factions. See, *In re Cassar*, 139 B.R. 253, (Bankr.D.Co.1992).

▅▅▅ The creditor argues that to interpret § 521(2) any other way allows the debtor to redeem by installments, since Debtor's personal liability is discharged, while the property is retained by installment payments. This is not entirely correct. Redemption does require immediate payment. See, e.g. *In re Bell*, 700 F.2d 1053 (6th Cir.1983) and *In re Avila*, 83 B.R. 6 (BAP–9th Cir.1987). However, the flip side of this coin is that redemption also requires the creditor to release its lien after it receives the court determined value of its allowed secured claim, which is usually a sum less than the full amount of its debt. We now understand that lienstripping does not apply in chapter 7. See *Dewsnup v. Timms*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Thus, if the debtor elects to retain the property without some alternative agreement being

---

**3.** 11 U.S.C. § 722 provides as follows:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem *tangible personal property*, intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the

allowed secured claim of such holder that is secured by such lien.

**4.** 11 U.S.C. § 522(f) provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption, if such lien is ... (2) a nonpossessory, nonpurchase-money security interest....

reached with the creditor, and since it is clear that the automatic stay will terminate upon discharge, then any subsequent default will allow the creditor act to enforce its security rights without further court action. See 11 U.S.C. § 362(c). So the debtor will have to pay all of the creditor's claim, even that portion which would be discharged if the property were redeemed. A debtor therefore might lose its collateral post-discharge even after it pays the creditor a sum equal to or exceeding the actual value of the property, because the creditor's lien is not being released. This is significantly different than redemption by installments.

While the 5th Circuit has not specifically addressed this issue, other courts have. After a careful review of the authorities, this court follows the result and reasoning of the Fourth Circuit case, *In re Belanger*, 962 F.2d 345 (4th Cir.1992). The *Belanger* case involved Chapter 7 debtors who purchased a mobile home financed by Home Owners Financing Corporation. The Belangers filed a statement of intention pursuant to § 521(2) indicating that they would retain the mobile home. They had remained current on their payments. The creditor filed, as in the case at bar, a motion to compel the debtors to reaffirm the debt, redeem the collateral, or surrender it, arguing that § 521(2) restricts the debtors to these options. The bankruptcy court had denied the motion, holding that the Belangers had complied with § 521(2) by giving notice of their intent to retain the property while continuing to make payments in accordance with their contract with the creditor. In subsequent appeals, the district court and the court of appeals affirmed this decision. The Fourth Circuit, as well as the lower courts, found that the options set out in the statute are not exclusive. Section 521(2) was held to be a procedural or notice provision which compels the debtor to inform secured creditors of their intention with respect to the creditor's collateral. *In re Belanger*, supra. The authoritative treatise on bankruptcy law, Collier's, states that the "... primary purpose of section 521(2) is one of notice, to remedy creditors' complaints to Congress that they could not reach debtors' attorneys and were not permitted to contact pro se debtors at all." 3 Collier on Bankruptcy ¶ 521.09A (1992)

Another reason this court believes that § 521(2) is not mandatory and exclusive is § 521(2)(C). This section provides that nothing contained in § 521(2)(A) or (B) alters the rights of the debtor or trustee with regard to the property at issue. If § 521 were interpreted to compel the debtor either to redeem, reaffirm or surrender such collateral, such interpretation would indeed affect the substantive rights of the debtor in his property. A person who has filed a Chapter 7 petition is probably financially unable to redeem some collateral under § 722, since redemption requires a lump sum payment. To retain this property, the debtor would be compelled to enter into a reaffirmation agreement with the creditor. Here a creditor would have a strong bargaining position since reaffirmation requires the creditor's consent. This negates the voluntariness required in reaffirmation agreements, pursuant to § 524(c) and wholly ignores the right to rescind afforded the debtor.

In support of this interpretation of § 521(2)(C) is the only legislative history uncovered by the courts who have ruled on the issue. At the time of the passage of the 1984 amendments to the Bankruptcy Code, Representative Rodino stated that the duty imposed under § 521(2) "does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property." 130 Cong.Rec. H1810 (daily ed. Mar. 21, 1984)

Collier's also interprets the legislative history of this code section to find that

"... Congress rejected the proposition, embodied in earlier bills, that the debtor was required to choose among only the options of surrendering the property, redeeming it, or reaffirming the debt. Section 521(2) does not preclude the possibility of simply continuing to pay a secured debt which is current, and retaining the property, without a reaffirmation."

3 Collier on Bankruptcy, ¶ 521.09A (1992)

As the district court points out in *Belanger*, "[c]reditors are not unduly prejudiced by a debtor's election to retain the collateral and keep payments current." *In re Belanger*, 128 B.R. 142, 145 (E.D.N.C. 1990). As long as the debtors remain current on payments, the creditor is receiving the same performance for which he originally bargained. If the debtor does default under the contract, the creditor is still entitled to repossess his collateral.

The concept that this provision is to afford notice is not without real value to the creditor. Without it the creditor is faced with the injunction of the automatic stay immediately upon the filing of the bankruptcy petition. In that posture, the creditor cannot negotiate with the debtor directly whenever legal counsel is involved. Thus, if debtor's counsel is not responsive, the creditor must either await further developments, or commence some form of litigation for relief from the automatic stay or to receive some form of adequate protection. If the debtor already intends to redeem, or reaffirm, or surrender the property, then the creditor is spending funds and time which may be unnecessary. Also, if the debtor does not intend to claim the property as exempt, the creditor could commence negotiations with the Trustee. Once notified of the debtor's intent, a creditor is able to make better informed decisions about future action which may avoid unnecessary costs and delays. Even property eligible to be claimed as exempt is not always so claimed. If the creditor waited for the discharge so that the automatic stay would terminate, it could be unhappily faced with the fact that the item at issue was still property of the estate and thus under the possession and control of the Trustee and still under the protection of the automatic stay. See 11 U.S.C. § 362(c)(1).

Other courts which have addressed this issue and found that the debtor is not limited to surrendering the property, or faced with redeeming or reaffirming to retain the property include *In re Belanger*, supra; *Riggs v. Perry*, 729 F.2d 982, (4th Cir.1984); *In re Berenguer*, 77 B.R. 959, (Bankr. S.D.Fla.1987); and *In re Hunter*, 121 B.R.

609 (Bankr.N.D.Al.1990). This court is familiar with an unpublished opinion from the Northern District of Texas, affirmed by the U.S. District Court to this same effect, in *Bank One, Texas, N.A. v. Terry Adams and Annie Adams*, Case No. 391–32098–SAF–7 (Bankr.N.D.Tex.1991). The Bankruptcy Court therein found that § 521(2) was not mandatory and exclusive, that it was primarily for notice purposes, and that retaining property by the Debtors without reaffirming or redeeming was permissible. The U.S. District Court affirmed this opinion under Case No. CA–3–91–2394–T.

There are cases to the contrary. See, e.g. *Matter of Edwards*, 901 F.2d 1383 (7th Cir.1990); *In re Chavarria*, 117 B.R. 582, (Bankr.D.Id.1990); and the unpublished opinion of our colleague Judge Monroe in *Matter of Lawson*, Case No. 91–10481, Adv. No. 91–1062 (Bankr.W.D.Tex.1991). The Seventh Circuit Court of Appeals dealt with this issue in *Matter of Edwards*, and ruled that debtors were limited to the exclusive remedies of reaffirming the debt, redeeming the collateral in a lump sum or surrendering the collateral. The collateral in the case was a car and a truck. The debtor was current in her payments under the contract at the time the issue arose. The *Edwards* court read the language of the statute as mandatory, requiring a debtor to choose an option set out in the statute and perform within a specified period of time. *Edwards* relies on an older Sixth Circuit opinion, *In re Bell*, 700 F.2d 1053 (6th Cir.1983) The *Bell* court took a more creditor-oriented approach and reasoned that permitting a debtor to retain property without a reaffirmation of personal liability would allow debtors to force a new arrangement on a creditor. *In re Bell*, 700 F.2d at 1056.

Collier's criticizes the *Edwards* decision:

"The Court of Appeals for the Seventh Circuit in *Matter of Edwards*, 901 F.2d 1383 (7th Cir.1990), simply ignored both section 521(2)(C) and the legislative history ... in coming to the contrary conclusion that section 521(2) showed Congress' intent that redemption and reaffirmation

were the only options for a debtor who wished to retain property."

3 Collier on Bankruptcy, ¶ 521.09A (1992).

The bankruptcy court in Idaho in *In re Chavarria* follows the *Edwards* case, and then discusses the alternatives a debtor might have in this situation. That court reasoned that if the debtor has the ability to pay the secured claim over time, then the debtor should file a Chapter 13 petition. This decision would limit any debtor who wishes to retain collateral for which he has made timely payments to filing a Chapter 13 case. Of course, Chapter 13 is a chapter which can only be commenced through a voluntary election. This interpretation does not seem to be supported by any other Code provision and is rejected by this court. As the *Belanger* opinion points out,

> "Chapter 13 envisions a new arrangement among the debtor and creditors, not a continuation of a contract to which the creditor and debtor have already agreed. We see no reason to require a debtor to opt for Chapter 13 simply because he or she wants to remain current on a contract. If Congress intended Chapter 13 to be the sole remedy for a debtor who wished to abide by contractual obligations, there would have been little reason for enacting § 521(2)."

*Belanger,* 962 F.2d 345 (4th Cir.1992).

### CONCLUSION

This court concludes that § 521(2) does not limit a debtor to redemption or reaffirmation when the debtor desires to retain property which secures consumer debt. A separate opinion of even date herewith will be entered to evidence this conclusion.

### ORDER ON MOTION TO COMPEL DEBTORS' COMPLIANCE WITH SECTION 521

On this date the court has entered a Memorandum Opinion with findings of fact and conclusions of law as required by Rule 7052. This was a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K), (M), & (O).

Based upon such findings, the court concluded that the creditor Bergstrom Federal

Credit Union's motion to compel the debtors to redeem or reaffirm the consumer debt secured by their automobile as a condition to retention of the automobile was not supported by the provisions of § 521(2).

THEREFORE, IT IS ORDERED that the Motion To Compel Debtors' Compliance With Section 521(2) is DENIED.